RECEIVED
ENTERED                     SERVED ON
                    COUNSEL/PARTIES OF RECORD

SEP - 9 2020

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
                              DEPUTY

"NO COPY"

1

Christian Marie Fulkerson
P.O. Box 60686
2   Reno, NV 89506
(775) 762-5022
3   candhfulkerson@gmail.com

4

5          **IN THE UNITED STATES DISTRICT COURT**
            **FOR THE DISTRICT OF NEVADA**
6                    **CIVIL DIVISION**

7

8    CHRISTIAN M. FULKERSON,            Case No.:    3:20-cv-00512

9              Plaintiff,

10   vs.                                COMPLAINT

11   THRIVE MARKET, INC., et al.

12             Defendants,

13            <u>OUTLINE</u>

14

15          THE PLAINTIFF, CHRISTIAN M. FULKERSON IS FILING A LAWSUIT INVOLVING THE
     VIOLATION OF HER CIVIL RIGHTS IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
16   NEVADA. THE PLAINTIFF IS SEEKING AN INJUNCTION TO RESTORE HER EMPLOYMENT WITH THE
     DEFENDANT, THRIVE MARKET ON THE GROUNDS THAT THEY ILLEGALLY COERCED TO
17   TERMINATE HER EMPLOYMENT WHICH IS WRONGFUL TERMINATION. THE CIRCUMSTANCES
     LEADING UP TO THE WRONGFUL TERMINATION INCLUDED COLLUSION, AGE, GENDER, RACE
18   DISCRIMINATION, HARASSMENT, RETALIATION, AND NUMEROUS OTHER CIVIL RIGHTS.

19          THE PLAINTIFF HAS FILED NUMEROUS COMPLAINTS WITH THE EEOC, THE OSHA
20   WHISTLEBLOWER PROTECTION PROGRAM, THE DOJ, THE DEPARTMENT OF LABOR, THESE
     COMPLAINTS INVOLVED SEVERE DISCRIMINATION, DAILY HARASSMENT, MISTREATMENT,
21   COLLUSION, CHARACTER ASSASSINATION, LYING, RETALIATION, FAILURE TO PROMOTE AS A
     QUALIFIED EMPLOYEE, AND WRONGFUL TERMINATION.
22

23            <u>FACTS</u>

24

25          THE PLAINTIFF, CHRISTIAN M. FULKERSON STARTED GETTING DISCRIMINATED
     AGAINST AND HARASSED AT THE BEGINNING OF 2020. A NEW DIRECTOR WAS HIRED BY THRIVE
26   MARKET, LEVON COLLINS. THIS DIRECTOR IMMEDIATELY STARTED HARASSING AND
     DISCRIMINATING AGAINST THE PLAINTIFF. THE PLAINTIFF BELIEVES THE HARASSMENT AND
27   DISCRIMINATION STARTED AFTER THE NEW DIRECTOR LEARNED HOW MUCH MONEY THE
     PLAINTIFF MADE. THE PLAINTIFF WAS ON SALARY, MAKING $69,000 PER YEAR AS AN OPERATIONS
28   SUPERVISOR. THE PLAINTIFF IS OVER 40 YEARS OF AGE, A FEMALE, AND CAUCASIAN, WHILE THE
     NEW DIRECTOR IS AFRICAN AMERICAN.

Paid Amt $ 400.00  Date 9/9/20
NVRNO
Receipt # 5047  Initials AB

THE PLAINTIFF WAS IN CHARGE OF SUPERVISING A TEAM OF EMPLOYEES CONSISTING OF 20-25 PEOPLE, WHICH OUTPERFORMED EVERY CREW THAT WORKS FOR THRIVE. THESE PERFORMANCE AND PRODUCTION RECORDS. THESE RECORDS CONTRADICT THE REASONING THAT THE DIRECTOR FOR THRIVE, LEVON COLLINS GAVE FOR TERMINATING THE PLAINTIFFS EMPLOYMENT. THE DIRECTOR HAD BEEN GIVING THE PLAINTIFF POOR PERFORMANCE REVIEWS EVEN WITH THE RECORDS BEING SET BY THE PLAINTIFF. AND HER TEAM OF STAFF.

THE PLAINTIFF NOTIFIED THRIVE MARKET OF THE COMPLAINTS OF HARASSMENT, DISCRIMINATION, AND RETALIATION TO THE MANAGERIAL STAFF AT THRIVE MARKET, WHILE NO OFFICIAL INVESTIGATION BY EITHER THRIVE, A 3RD PARTY, NOR THE GOVERNMENT AGENCIES HAD BEEN MADE AVAILABLE TO THE PLAINTIFF NOR THE DIRECTOR WHO INITIATED THE WRONGFUL TERMINATION.

THE PLAINTIFF BELIEVES THE DIRECTOR ACTED IN COLLUSION TO DISCREDIT AND MAKE A HISTORY OF POOR PERFORMANCE AGAINST THE PLAINTIFF, TO GET HER TERMINATED AND HIRE SOMEONE OUTSIDE OF THRIVE TO TAKE THE PLAINTIFFS POSITION.

## CLOSING

THE PLAINTIFF, CHRISTIAN M. FULKERSON WAS A DEDICATED EMPLOYEE OF THRIVE MARKET WHO SACRIFICED HER FREE TIME, FAMILY TIME, AND EXTRACURRICULAR TIME AND DEVOTED IT TO HER JOB. THE PLAINTIFF NEVER THOUGHT HER PERFORMANCE WOULD HAVE ANY ISSUES DUE TO HER FOCUSING ON SETTING PRODUCTION RECORDS.

THE CLAIM THAT HER POOR PERFORMANCE WAS THE LEADING CAUSE OF HER TERMINATION IS OUTRIGHT DUMBFOUNDING. HER INCOME AND POSITION SHOULD HAVE NEVER BEEN IN JEOPARDY. THE PLAINTIFF HAS THE EXPERIENCE, MINDSET, AND CAPACITY TO FULFILL HER JOB DUTIES AND SHOULD HAVE NEVER BEEN BEEN FIRED.

THE PLAINTIFF WAS FIRED WHILE SHE WAS UNDER THE PROTECTION OF THE OSHA WHISTLEBLOWER PROTECTION PROGRAM, THE DEPARTMENT OF LABOR, THE EEOC, THE DOJ, AND THE STATE OF NEVADA DIVISION OF INDUSTRIAL RELATIONS.

THE PLAINTIFF BELIEVES THAT LEVON BELL WAS ACTING IN RETALIATION, AND COMMITTED A CRIME BY FIRING THE PLAINTIFF.

## PRAYER FOR RELIEF

THE PLAINTIFF, CHRISTIAN M. FULKERSON IS ASKING THE COURT TO REINSTATE HER EMPLOYMENT IMMEDIATELY, OR FACE FINES, PUNITIVE DAMAGES, AND MONETARY DAMAGES.

THE PLAINTIFF IS SEEKING AN IMMEDIATE TEMPORARY RESTRAINING ORDER AGAINST THE DIRECTOR OF THRIVE, LEVON COLLINS.

THE PLAINTIFF IS SEEKING LOSS IN WAGES, PAIN AND SUFFERING DAMAGES, COMPENSATORY DAMAGES, AS WELL AS PROMOTION TO WAREHOUSE MANAGER.

RELIEF

THE PLAINTIFF IS SEEKING IMMEDIATE REINSTATEMENT AS OPERATIONS
SUPERVISOR DUE TO HER BEING A PROTECTED EMPLOYEE UNDER THE OSHA WHISTLEBLOWER
PROTECTION PROGRAM.

THE PLAINTIFF IS SEEKING ACTUAL DAMAGES IN EXCESS OF $1,500,000
THE PLAINTIFF IS SEEKING PUNITIVE DAMAGES IN EXCESS OF $1,500,000
THE PLAINTIFF IS SEEKING LOSS OF WAGES AND LOSS OF FUTURE WAGES IN
EXCESS OF $1,500,000
THE PLAINTIFF IS SEEKING COMPENSATORY DAMAGES IN EXCESS OF $500,000
THE PLAINTIFF IS SEEKING FINES IMPOSED ON THE DEFENDANT IN EXCESS OF
$500,000

DATED THIS 9TH DAY OF SEPTEMBER, 2020


Christian M. Fulkerson
P.O. Box 60686
Reno, NV 89506
Telephone: (775) 762-5022
Email: candhfulkerson@gmail.com
Plaintiff

1    Christian Marie Fulkerson
     P.O. Box 60686
2    Reno, NV 89506
     (775) 762-5022
3    candhfulkerson@gmail.com

4

                    FILED          RECEIVED
              ENTERED          SERVED ON
                      COUNSEL/PARTIES OF RECORD

                      SEP - 9 2020

              CLERK US DISTRICT COURT
              DISTRICT OF NEVADA
         BY:                          DEPUTY

5         IN THE UNITED STATES DISTRICT COURT
6            FOR THE DISTRICT OF NEVADA
                    CIVIL DIVISION
7

8    CHRISTIAN M. FULKERSON,              Case No.:
9              Plaintiff,
10   vs.                                  EXHIBITS
11   THRIVE MARKET, INC.,
12             Defendant,

13       THE PLAINTIFF, CHRISTIAN M. FULKERSON IS FILING A LIST OF EXHIBITS TO
14   ACCOMPANY HER COMPLAINT

15       DATED THIS 9TH DAY OF SEPTEMBER, 2020

16

17

18                          Christian M. Fulkerson
19                          P.O. Box 60686
                            Reno, NV 89506
20                          Telephone: (775) 762-5022
                            Email: candhfulkerson@gmail.com
21                                   Plaintiff

22

23

24

25

26

27

28

# **O**SHA®**Fact**Sheet

# OSHA's Whistleblower Protection Program

OSHA's Whistleblower Protection Program enforces the provisions of more than 20 federal laws protecting employees from retaliation for, among other things, raising or reporting concerns about hazards or violations of various workplace safety and health, aviation safety, commercial motor carrier, consumer product, environmental, financial reform, food safety, health insurance reform, motor vehicle safety, nuclear, pipeline, public transportation agency, railroad, maritime, and securities laws. Employees who believe that they have experienced retaliation in violation of one of these laws may file a complaint with OSHA.

## Whistleblower Laws Enforced by OSHA

Following is a list of statutes over which OSHA has jurisdiction. Each statute has a different time frame in which a complaint can be filed.

- *Asbestos Hazard Emergency Response Act (90 days)*
- *Clean Air Act (30 days)*
- *Comprehensive Environmental Response, Compensation and Liability Act (30 days)*
- *Consumer Financial Protection Act of 2010 (180 days)*
- *Consumer Product Safety Improvement Act (180 days)*
- *Energy Reorganization Act (180 days)*
- *Federal Railroad Safety Act (180 days)*
- *Federal Water Pollution Control Act (30 days)*
- *International Safe Container Act (60 days)*
- *Moving Ahead for Progress in the 21st Century Act (motor vehicle safety) (180 days)*
- *National Transit Systems Security Act (180 days)*
- *Occupational Safety and Health Act (OSH Act) (30 days)*
- *Pipeline Safety Improvement Act (180 days)*
- *Safe Drinking Water Act (30 days)*
- *Sarbanes-Oxley Act (180 days)*
- *Seaman's Protection Act (180 days)*
- *Section 402 of the FDA Food Safety Modernization Act (180 days)*
- *Section 1558 of the Affordable Care Act (180 days)*
- *Solid Waste Disposal Act (30 days)*
- *Surface Transportation Assistance Act (180 days)*
- *Toxic Substances Control Act (30 days)*
- *Wendell H. Ford Aviation Investment and Reform Act for the 21st Century (90 days)*

## What Is Retaliation?

Retaliation is an adverse action against an employee because of activity protected by one of these whistleblower laws. Retaliation can include several types of actions, such as:

- Firing or laying off
- Blacklisting
- Demoting
- Denying overtime or promotion
- Disciplining
- Denying benefits
- Failing to hire or rehire
- Intimidation
- Reassignment affecting promotion prospects
- Reducing pay or hours
- Making threats

## Filing a Complaint

Employees who believe that their employers retaliated against them because they engaged in protected activity should contact OSHA as soon as possible because they must file any complaint within the legal time limits.

An employee can file a complaint with OSHA by visiting or calling his or her local OSHA office, sending a written complaint to the closest OSHA office, or filing a complaint online. No particular form is required and complaints may be submitted in any language.

Written complaints may be filed by fax, electronic communication, hand delivery during business hours, U.S. mail (confirmation services recommended), or other third-party commercial carrier.

The date of the postmark, fax, electronic communication, telephone call, hand delivery, delivery to a third-party commercial carrier, or in-person filing at an OSHA office is considered the date filed.

To file a complaint electronically, please visit: www.osha.gov/whistleblower/WBComplaint.html.

To contact an OSHA area office, employees should call 1-800-321-OSHA (6742) to be connected to the closest area office or visit www.osha.gov/html/RAmap.html to find local OSHA office address and contact information.

When OSHA receives a complaint, OSHA will first review it to determine whether certain basic requirements are met, such as whether the complaint was filed on time. If so, the complaint will be investigated in order to determine whether the employer retaliated against the employee for engaging in activity protected under one of OSHA's whistleblower laws. OSHA may also attempt to assist the employer and employee in reaching a settlement of the case.

Private-sector employees throughout the United States and its territories and employees of the United States Postal Service (USPS) who suffer retaliation because of occupational safety or health activity are covered by section 11(c) of the OSH Act. In addition, private-sector employees are also covered by laws in States which operate their own comprehensive occupational safety and health programs approved by Federal OSHA ("State Plans"). For information on the whistleblower provisions of the 22 State Plan States which cover private-sector employees, visit www.osha.gov/dcsp/osp.

With the exception of employees of the USPS, public-sector employees (those employed as municipal, county, state, territorial, or federal workers) are not covered by the OSH Act. State and local government employees are covered by the whistleblower provisions of all the States with State Plans, including six States which cover only State and local government employees.

A federal employee who is not a USPS employee who wishes to file a complaint alleging retaliation due to disclosure of a substantial and specific danger to public health or safety or involving a violation of an occupational safety or health standard or regulation should contact the Office of Special Counsel (www.osc.gov). Such federal employees are also covered by their own agency's procedures for remedying such retaliation.

Public-sector employees who are unsure whether they are covered under a whistleblower law should call 1-800-321-OSHA (6742) for assistance, or visit www.whistleblowers.gov.

## Results of the Investigation

If OSHA determines that retaliation in violation of the OSH Act, *Asbestos Hazard Emergency Response Act*, or the *International Safe Container Act* has occurred, the Secretary of Labor may sue in federal district court to obtain relief. If OSHA determines that no retaliation has occurred, it will dismiss the complaint.

Under the remaining whistleblower laws, if the evidence supports an employee's complaint of retaliation, OSHA will issue an order requiring the employer, as appropriate, to put the employee back to work, pay lost wages, and provide other possible relief. If the evidence does not support the employee's complaint, OSHA will dismiss the complaint. After OSHA issues a decision, the employer and/or the employee may request a full hearing before an administrative law judge of the Department of Labor. The administrative law judge's decision may be appealed to the Department's Administrative Review Board.

Under some of the laws, an employee may file the retaliation complaint in federal district court if the Department has not issued a final decision within a specified number of days (180, 210 or 365 depending on the law).

## To Get Further Information

To obtain more information on whistleblower laws, go to www.whistleblowers.gov.

**This is one in a series of informational fact sheets highlighting OSHA programs, policies or standards. It does not impose any new compliance requirements. For a comprehensive list of compliance requirements of OSHA standards or regulations, refer to Title 29 of the Code of Federal Regulations. This information will be made available to sensory-impaired individuals upon request. The voice phone is (202) 693-1999; teletypewriter (TTY) number: (877) 889-5627.**



**Occupational Safety and Health Administration**

U.S. Department of Labor

DWPP FS-3638 04/2018



# OSHA INSTRUCTION

**U.S. DEPARTMENT OF LABOR**      **Occupational Safety and Health Administration**

| DIRECTIVE NUMBER: CPL 02-03-008 | EFFECTIVE DATE: 02/04/2019 |
|---|---|

**SUBJECT:** Alternative Dispute Resolution (ADR) Processes for Whistleblower Protection Programs

# ABSTRACT

**Purpose:**      The purpose of this Instruction is to establish policies and procedures for OSHA's regional Alternative Dispute Resolution (ADR) Program to resolve whistleblower retaliation complaints.

**Scope:**      OSHA-Wide. Implementation of the ADR Program is at the discretion of Regional Administrators (RAs).

**References:**      OSHA Instruction: CPL 02-03-007, January 28, 2016 – Whistleblower Investigations Manual (WIM); the Occupational Safety and Health Act (OSH Act), 29 U.S.C. § 660(c); the Surface Transportation Assistance Act, 49 U.S.C. § 31105; the Asbestos Hazard Emergency Response Act, 15 U.S.C. § 2651; the International Safe Container Act, 46 U.S.C. § 80507; the Safe Drinking Water Act, 42 U.S.C. § 300j-9(i); Federal Water Pollution Control Act, 33 U.S.C. § 1367; the Toxic Substances Control Act, 15 U.S.C. § 2622; the Solid Waste Disposal Act, 42 U.S.C. § 6971; the Clean Air Act, 42 U.S.C. § 7622; the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9610; the Energy Reorganization Act, 42 U.S.C. § 5851; the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century, 49 U.S.C. § 42121; the Sarbanes-Oxley Act, 18 U.S.C. § 1514A; the Pipeline Safety Improvement Act, 49 U.S.C. § 60129; the Federal Railroad Safety Act, 49 U.S.C. § 20109; the National Transit Systems Security Act, 6 U.S.C. § 1142; the Consumer Product Safety Improvement Act, 15 U.S.C. § 2087; the Affordable Care Act, 29 U.S.C. § 218C; the Consumer Financial Protection Act of 2010, 12 U.S.C § 5567; the Seaman's Protection Act, 46 U.S.C. § 2114; the FDA Food Safety Modernization Act, 21 U.S.C. § 399d; and the Moving Ahead for Progress in the 21st Century Act, 49 U.S.C. § 30171.

**Cancellations:**      This Instruction amends CPL 02-03-006, dated August 18, 2015.

**State Plan Impact:** Federal Program Change, Notice of Intent Required, Adoption Encouraged.

This Instruction describes a Federal Program Change that updates policies and procedures for OSHA's ADR Program and may be used in conjunction with the State Plans' investigation of whistleblower complaints under the State Plan equivalent to section 11(c) of the OSH Act. References to whistleblower provisions other than section 11(c) of the OSH Act are not applicable to State Plans. State Plans may, but are not required to, adopt this Instruction and State Plans that adopt this Instruction should implement it in an "at least as effective" manner.

State Plans are required to notify OSHA within 60 days whether they already have a similar policy in place, intend to adopt new policies and procedures, or do not intend to adopt this Instruction. If the State Plan does not adopt at first, but at some later point decides to adopt this Instruction, or an ALAE version of this Instruction, the State Plan must notify OSHA of this change in intent. Within 60 days of adoption, the State Plan must provide an electronic copy of the policy or link to where their policy is posted on the State Plan's website. The State Plan must also provide the date of adoption and identify differences, if any, between their policy and OSHA's.

**Action Offices:** Directorate of Whistleblower Protection Programs (DWPP); OSHA Regional Offices.

**Originating Office:** DWPP, Washington, D.C.

**Contact:** Directorate of Whistleblower Protection Programs
200 Constitution Ave., NW,
N4618 Washington, D.C. 20210
(202) 693-2199

By and Under the Authority of

Loren Sweatt
Acting Assistant Secretary

## Executive Summary

From October 1, 2012, to September 30, 2013, OSHA piloted a program to offer Alternative Dispute Resolution (ADR) in Regions V (Chicago) and IX (San Francisco), OSHA Direction: DIR 12-01 (CPL 02), October 1, 2012 – Whistleblower Alternative Dispute Resolution (ADR) Program.

The ADR pilot program offered whistleblower parties two new avenues for exploring resolution of their disputes through a voluntary settlement agreement: (1) the "early resolution" process offered parties the opportunity to negotiate a settlement with the assistance of a neutral OSHA whistleblower expert who would not be involved in making decisions about the outcome of an OSHA whistleblower investigation, and (2) the "mediation" process offered parties the opportunity to participate in a one-day, in-person mediation session with a professional third-party mediator.

The "early resolution" process proved to be an effective and viable alternative to the investigative process and an invaluable asset to OSHA's whistleblower protection programs. The ADR pilot program demonstrated that adding staff dedicated to the coordination and facilitation of settlement negotiations provides valuable support to OSHA's whistleblower enforcement resources, and furnishes a highly desired service to the program's customers. In light of these results, in 2015, OSHA issued an Instruction to expand the availability of the ADR "early resolution process" to permit all regions to offer this process as OSHA's ADR Program, at the discretion of the OSHA Regional Administrator.

Based on feedback received from regional whistleblower program managers, DWPP learned that OSHA managers and other DOL officials occasionally need limited access to confidential communications for supervision and program evaluation purposes. This Instruction updates the 2015 Instruction to clarify that the neutral OSHA facilitator may share ADR communications with DOL officials when it is necessary for administrative and supervisory purposes, or to seek legal or policy guidance on novel or complex questions that arise during the ADR proceeding, so long as the DOL official(s) receiving the communications will not be involved in any further investigations or proceedings related to the whistleblower complaint if a settlement is not reached through ADR.

This Instruction sets forth the policies and procedures that apply to OSHA's ADR Program. This Instruction does not preclude OSHA's regional offices from offering additional ADR processes (*e.g.*, third-party mediations) to parties.

## Significant Changes

This Instruction amends CPL 02-03-006, which became effective on August 18, 2015, to:

1. Revise the confidentiality section to explain the circumstances in which a Neutral may share information from ADR with other OSHA officials;
2. Make minor changes in the terminology used to describe the ADR Program and the OSHA personnel involved in the ADR Program; and
3. Update the Request for Alternative Resolution Form (Attachment A) to reflect current terminology and procedures.

# Table of Contents

I.      Purpose. ........................................................................................................... 1

II.     Scope. .............................................................................................................. 1

III.    References. ....................................................................................................... 1

IV.     Cancellations ................................................................................................... 1

V.      Significant Changes ......................................................................................... 1

VI.     Action Offices. ................................................................................................ 2

      A.      Responsible Offices. .......................................................................... 2

      B.      Action Offices. ................................................................................... 2

      C.      Information Offices. ............................................................................ 2

VII.    Federal Program Change. ................................................................................ 2

VIII.   Background. ..................................................................................................... 2

IX.     Definitions. ...................................................................................................... 3

X.      Roles and Responsibilities. ............................................................................. 4

      A.      Regional Administrator (RA). ............................................................ 4

      B.      Directorate of Whistleblower Protection Programs (DWPP). ............ 4

XI.     OSHA's ADR Program .................................................................................... 5

      A.      Overview ............................................................................................. 5

      B.      Process. ............................................................................................... 6

XII.    Core ADR Principles and Concepts. ............................................................... 8

      A.      Voluntary ............................................................................................ 8

      B.      Good Faith .......................................................................................... 8

      C.      Neutrality ............................................................................................ 8

      D.      Confidentiality. ................................................................................... 9

      E.      Conflict of Interest. ............................................................................ 10

XIII.   Parties' Ability to Settle during the OSHA Investigation ............................... 10

Attachment A ............................................................................................................ A-1

Attachment B ............................................................................................................ B-1

I.     Purpose

       The purpose of this Instruction is to establish policies and procedures for OSHA's regional Alternative Dispute Resolution (ADR) Program to resolve whistleblower complaints.

II.    Scope

       OSHA-Wide. Implementation of OSHA's ADR Program is at the discretion of Regional Administrators.

III.   References

       OSHA Instruction: CPL 02-03-007, January 28, 2016 – Whistleblower Investigations Manual (WIM); the Occupational Safety and Health Act (OSH Act), 29 U.S.C. § 660(c); the Surface Transportation Assistance Act, 49 U.S.C. § 31105; the Asbestos Hazard Emergency Response Act, 15 U.S.C. § 2651; the International Safe Container Act, 46 U.S.C. § 80507; the Safe Drinking Water Act, 42 U.S.C. § 300j-9(i); Federal Water Pollution Control Act, 33 U.S.C. § 1367; the Toxic Substances Control Act, 15 U.S.C. § 2622; the Solid Waste Disposal Act, 42 U.S.C. § 6971; the Clean Air Act, 42 U.S.C. § 7622; the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9610; the Energy Reorganization Act, 42 U.S.C. § 5851; the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century, 49 U.S.C. § 42121; the Sarbanes-Oxley Act, 18 U.S.C. § 1514A; the Pipeline Safety Improvement Act, 49 U.S.C. § 60129; the Federal Railroad Safety Act, 49 U.S.C. § 20109; the National Transit Systems Security Act, 6 U.S.C. § 1142; the Consumer Product Safety Improvement Act, 15 U.S.C. § 2087; the Affordable Care Act, 29 U.S.C. § 218C; the Consumer Financial Protection Act of 2010, 12 U.S.C § 5567; the Seaman's Protection Act, 46 U.S.C. § 2114; the FDA Food Safety Modernization Act, 21 U.S.C. § 399d; and the Moving Ahead for Progress in the 21st Century Act, 49 U.S.C. §30171.

IV.    Cancellations

       This Instruction amends CPL 02-03-006, dated August 18, 2015.

V.     Significant Changes

       This Instruction amends CPL 02-03-006, which became effective on August 18, 2015, to:

       1. Revise the confidentiality section to explain the circumstances in which a Neutral may share information from ADR with other OSHA personnel;
       2. Make minor changes in the terminology used to describe the ADR Program and the OSHA personnel involved in the ADR Program; and
       3. Update the Request for Alternative Resolution Form (Attachment A) to reflect current terminology and procedures.

VI.   Action Offices

    A.   Responsible Offices

        Directorate of Whistleblower Protection Programs (DWPP); OSHA Regional Offices. See "Roles and Responsibilities" for further information.

    B.   Action Offices

        Directorate of Whistleblower Protection Programs (DWPP); OSHA Regional Offices. See "Roles and Responsibilities" for further information.

    C.   Information Offices

        Directorate of Cooperative and State Programs

VII.  Federal Program Change

Federal Program Change, Notice of Intent Required, Adoption Encouraged.

This Instruction describes a Federal Program Change that updates policies and procedures for OSHA's ADR Program and may be used in conjunction with the State Plans' investigation of whistleblower complaints under the State Plan equivalent to section 11(c) of the OSH Act. References to whistleblower provisions other than section 11(c) of the OSH Act are not applicable to State Plans. State Plans may, but are not required, to adopt this Instruction and State Plans that adopt this Instruction should implement it in an "at least as effective" manner.

State Plans are required to notify OSHA within 60 days whether they already have a similar policy in place, intend to adopt new policies and procedures, or do not intend to adopt this Instruction. If the State Plan does not adopt at first, but at some later point decides to adopt this Instruction, or an ALAE version of this Instruction, the State Plan must notify OSHA of this change in intent. Within 60 days of adoption, the State Plan must provide an electronic copy of the policy or link to where their policy is posted on the State Plan's website. The State Plan must also provide the date of adoption and identify differences, if any, between their policy and OSHA's.

VIII.  Background

This Instruction articulates the policies and procedures that OSHA will use when administering the ADR Program to attempt to resolve complaints filed under the whistleblower provisions of the OSH Act and 21 other federal statutes. The whistleblower protection laws enforced by OSHA cover millions of employees in healthcare, food, finance, air travel, pipeline, transit, rail, and other industries. Each year, OSHA receives and dockets several thousand whistleblower complaints for

investigation. OSHA's ADR Program can assist complainants and respondents to resolve their whistleblower complaints in a cooperative and voluntary manner. When ADR is successful, it can provide timely relief and finality to both parties.

Federal ADR processes are authorized by the Administrative Dispute Resolution Act (ADRA), 5 U.S.C. § 571 *et seq.* An agency may use an alternative dispute resolution procedure to resolve an issue in controversy that relates to an administrative program, if the parties agree to such proceeding, 5 § U.S.C. 572(a). The ADRA defines an "administrative program" to include a "Federal function which involves protection of the public interest and the determination of rights, privileges, and obligations of private persons through rulemaking, adjudication, licensing, or investigation . . . ." 5 U.S.C. § 571(2).

Offered as an alternative to the investigative process, the ADR Program provides parties with the opportunity to resolve their dispute with the assistance of a neutral, confidential OSHA representative (the Neutral) who has subject-matter expertise in whistleblower investigations. The purpose of this Instruction is to articulate the principles and procedures that apply to the ADR Program. This Instruction does not preclude OSHA's regional offices from offering additional ADR processes (*e.g.*, third-party mediations) to parties.

IX.     Definitions

The following terms are defined for the purposes of this Instruction:

*Alternative Dispute Resolution (ADR)* – is an approach to the resolution of whistleblower complaints by means other than litigation. As a general matter, ADR is broadly understood to involve the use of negotiation, mediation, conciliation, or arbitration. These techniques are not mutually exclusive in any particular conflict, but can be used sequentially or in combination with other methods for resolving whistleblower complaints. ADR is a consensual process that involves the intervention of a third-party Neutral to assist parties in resolving their conflict.

*ADR Communication* – is any oral or written communication made for the purposes of an ADR proceeding by a party, a non-party participant, or the Neutral. However, a written agreement to enter into ADR or a final written settlement agreement is *not* an ADR communication.

*ADR Program* – is a voluntary program in which the parties to an OSHA whistleblower complaint agree to attempt to resolve the whistleblower complaint with the assistance of a Neutral. ADR can take place once a case has been docketed but before an investigation begins, or at any point while an investigation is ongoing. The focus of OSHA's ADR Program is to achieve a quick and voluntary resolution of the whistleblower complaint instead of an investigation to determine the validity of the charge and potential statutory violations. Should the parties elect to pursue ADR but fail to enter into a settlement agreement within a reasonable time frame, the case will be transferred to an OSHA Whistleblower Investigator to start or resume investigation of the complaint.

**Investigation** – is a process in which an OSHA official (the Investigator) investigates the whistleblower complaint and provides a written recommendation to the Supervisor based on the evidence and the law. The Supervisor then reviews the file and, in consultation with the Assistant Regional Administrator for Whistleblower Programs (ARA) and/or Office of the Regional Solicitor (RSOL), as warranted, recommends a determination or referral for litigation to the Regional Administrator or his or her designee.

**Neutral** – is a qualified, impartial OSHA representative designated to facilitate ADR, who will not be involved in making decisions regarding the outcome of any investigation into the whistleblower complaint.

**Settlement** – is a written agreement between parties to resolve a whistleblower complaint.

X.    Roles and Responsibilities

A.    Regional Administrator (RA)

The RA or his/her designee is responsible for:

1.    Ensuring that the ADR Program is staffed with appropriately trained and qualified staff members to serve as Neutral(s);

2.    Ensuring that information about the ADR Program and processes is provided to interested parties;

3.    Ensuring that OSHA's ADR Program is carried out consistently with the policies and procedures articulated in this Instruction, including ensuring that the ADR Program is separate from the investigative process in accordance with the ADRA;

4.    Ensuring that ADR Program activity is appropriately tracked, and that ADR Program activity data and information are shared with DWPP for reporting purposes;

5.    Ensuring that settlement agreements reached under the ADR Program are properly reviewed and approved consistently with OSHA's Whistleblower Investigations Manual (WIM).

B.    Directorate of Whistleblower Protection Programs (DWPP)

DWPP is responsible for:

1.    Providing technical assistance on ADR processes to OSHA's staff, including Neutrals;

4

2. Coordinating the delivery of appropriate training and guidance materials (*e.g.*, FAQs) to OSHA staff about OSHA's ADR Program, OSHA statutes, and applicable policies, which may include coordination with OSHA's Training Institute and the Neutrals;

3. Collecting and evaluating feedback on the ADR Program for reporting purposes;

4. Tracking, monitoring, and reporting on the overall outcomes of the ADR Program.

XI. OSHA's ADR Program

A. Overview

1. OSHA's ADR Program is a valuable alternative to the expensive and time-consuming process of an investigation and litigation.

2. OSHA's ADR Program is a voluntary process in which the parties agree to use a neutral, confidential OSHA representative (the Neutral) to assist them in resolving a whistleblower complaint by mutual agreement. Neutrals have no authority to impose settlements on the parties.

3. OSHA encourages parties to use the ADR Program, where available, as early as possible, but parties may request ADR at any point during an investigation. In the OSHA Regions that implement the ADR Program, once a case is docketed but before an investigation begins, OSHA will offer the parties the option of submitting their dispute to ADR. However, if parties choose not to engage in ADR before an investigation begins, they may still seek ADR at any point while OSHA's investigation is ongoing. OSHA will stay the investigation while ADR is taking place.

4. OSHA's ADR Program is separate from the investigative process. Information obtained by the Neutral during ADR is confidential and will not be disclosed to OSHA's investigative staff, except in limited circumstances as provided below (see Section XII.D. "Confidentiality").

5. During ADR, the Neutral may not offer a determination on whether a complaint has merit or the amount of damages that a complainant should seek. The Neutral may suggest how the parties might reach an agreement, and may give the parties an objective perspective on the strengths and weaknesses of their positions, but the Neutral may not offer judgment on the merits of the complaint.

5

6.   The Neutral may share documents between the parties during ADR at the parties' request, but the Neutral must not share those documents or otherwise discuss their contents with OSHA's investigative staff or any other individual not involved in ADR, except in limited circumstances as provided below (see Section XII.D. "Confidentiality"). Documents collected during ADR should be retained by the Regional Office in accordance with applicable file retention requirements, which include ensuring that ADR files are kept separate from the whistleblower investigative files.

7.   If the complaint is not resolved during ADR, a party is free to provide documents and evidence that it submitted during ADR to the assigned Investigator for consideration in the investigation. In addition, the assigned Investigator may request documents and information from a party as part of the investigation even though the party submitted this same information during ADR.

B.   Process

1.   In those OSHA Regions that implement the ADR Program, upon receiving a timely complaint that contains a *prima facie* allegation of retaliation, OSHA will send opening letters to both the respondent(s) and the complainant(s) informing the parties about OSHA's ADR Program and the option to submit their dispute to ADR. The opening letter will include a copy of the "ADR Request Form" (see Attachment A).

2.   If both parties request ADR at any point during the investigation, any investigative work will be stayed and the case will be submitted to a Neutral. Both parties will be required to complete an ADR Request Form (see Attachment A) to acknowledge their agreement to pursue ADR.

3.   If only one party agrees to ADR prior to the commencement of an investigation, both parties will be notified that the investigation will proceed according to the procedures identified in the WIM.

4.   Even if both parties request ADR, the Neutral may recommend to the RA, or his/her designee, that the case is not suitable for ADR. For example, OSHA may decline to accept a case for ADR if it believes that one or both of the parties do not intend to participate in good faith.

5.   If OSHA accepts the case for ADR, OSHA will assign the case to a Neutral. The Neutral will inform the parties of the ground rules for participating in the process, including the Neutral's role in the process, the applicable confidentiality rules, and OSHA's requirements for the approval of settlement agreements, as set forth in the WIM.

6.  During ADR, the Neutral will work with the parties to explore whether there is common ground for settlement. The Neutral may provide general information about the whistleblower law and procedures to the parties, and may give the parties an objective perspective on the strengths and weaknesses of their respective positions, but the Neutral will not offer judgment on the merits of the complaint.

7.  OSHA may terminate ADR under certain circumstances and/or at the discretion of the RA or his/her designee. For example, OSHA may terminate the process if either party violates the ground rules for participation, including engaging in abusive behavior and/or failing to participate in good faith. OSHA may also terminate the process if the parties reach an impasse and cannot come to an agreement within a reasonable amount of time. Because ADR is a voluntary process, OSHA must terminate the process if one or both of the parties decide to end the process for any reason.

8.  If the process ends without an agreement, the Neutral will transfer the case to the ARA, or other appropriate manager, for investigation. The Neutral will use the ADR Outcome Form (see Attachment B) for this purpose. When transferring the case for investigation, the Neutral will not comment on the positions of the parties or the communications that occurred during ADR. OSHA will then resume the investigation following the appropriate procedures outlined in the WIM.

9.  If the parties can agree upon a framework for settlement, the Neutral may draft a proposed settlement agreement following the procedures outlined in the WIM. Alternatively, the parties may draft and submit an agreement for OSHA's approval following the procedures outlined in the WIM. Whenever possible, the parties should be encouraged to use OSHA's standard settlement agreement. If OSHA–through the RA or his/her designee no lower than the ARA–approves the settlement agreement, the Neutral will return the agreement to the parties for signature.

10. If both parties sign an OSHA-approved settlement agreement, the Neutral will notify the ARA, or other appropriate manager, that the case has settled. The Neutral will use the ADR Outcome Form (see Attachment B) for this purpose. The Neutral will also provide the ARA/Manager with the original, signed copy of the settlement agreement for preservation in the investigative case file. When notifying the ARA/Manager of the settlement, the Neutral will not comment on the positions of the parties or the communications that occurred during ADR.

11. Regardless of the outcome of ADR, the Regional Office will retain documents collected during ADR in accord with applicable file retention requirements. ADR documents will be maintained separately

7

from whistleblower investigation case files and their contents will not be shared or discussed with OSHA's investigative staff or any other individual who was not involved in the ADR process, except in limited circumstances as discussed below in Section XII.D. ADR communications may also be disclosed if both parties consent to disclosure in writing or if disclosure is otherwise required by law. However, note that final settlement agreements approved by OSHA are not confidential ADR communications and must be included in the investigation case file.  See Section XII.D.2. below

12.    OSHA will not reimburse the parties for any travel expenses. ADR conferences can take place by telephone or video conference if travel would be costly or create a hardship for any party.

XII.    <u>Core ADR Principles and Concepts</u>

A.    <u>Voluntary</u>

ADR is a voluntary process. The parties must mutually agree to pursue ADR as an alternative to an investigation, and either party may choose to terminate the process at any time and return the case to investigation for any reason. Participating in ADR will not affect the parties' right to receive a full and fair investigation of the complaint if ADR does not resolve their dispute.

B.    <u>Good Faith</u>

The ADR process is only effective when the parties participate in good faith. "Good faith" participation means that the parties engage in the process with openness to resolving the whistleblower complaint and treat each other, the process, and the Neutral with respect. Parties should come to the process fully prepared to discuss resolution of the whistleblower complaint and must have full authority to settle the dispute. The Neutral may decide to end the ADR process if the parties are not participating in good faith.

C.    <u>Neutrality</u>

1.    The Neutral has no decision-making authority over the outcome of any investigation into the complaint, and does not represent either party.

2.    While the Neutral may give the parties an objective perspective on the strengths and weaknesses of their positions, he/she may not offer judgment on the merits of the case.

D.   Confidentiality

1.   Preserving the confidentiality of party statements and submissions during ADR, to the extent permitted under the law, allows parties to explore settlement without fear that their discussions will be used against them.

2.   ADR case files generally consist of communications between the parties and the Neutral. These files must be segregated from whistleblower investigative case files. ADR case files are generally exempt from disclosure under Freedom of Information Act (FOIA) Exemption 3 and should not be released in response to a FOIA request, in compliance with the ADRA. However, approved settlement agreements reached in ADR must be placed in the investigative case file because they are not dispute resolution communications that are confidential under the ADRA. Settlement agreements are subject to FOIA, including possible protection from disclosure under FOIA Exemption 4 and the Executive Order 12600 process.

3.   The Neutral will keep confidential any communications made and/or documents submitted during ADR, including any settlement offers made, to the extent permitted by law, except that such communications and/or documents may be shared with other DOL officials when it is necessary for administrative and supervisory purposes, or to seek legal or policy guidance on novel or complex questions that arise during the ADR proceeding.

4.   However, the Neutral will not share ADR communications, including any settlement offers made or documents submitted during ADR, or discuss the merits of the complaint, with any DOL official who will be involved in any further investigations or proceedings related to the whistleblower complaint if a settlement is not reached through ADR. The Neutral may only communicate the outcome of the ADR process to such persons. If a settlement is not reached through ADR, the parties may share any of their own communications made during ADR with the OSHA Investigator.

5.   At the conclusion of ADR, all information or materials provided to, or created by, the Neutral—including all notes, records, or documents generated during the course of ADR—will be maintained in accord with applicable file retention requirements, which includes keeping these records separate from the OSHA investigation case file and inaccessible to OSHA's investigative staff. Parties and/or their representatives are permitted to retain their own notes.

6.   All parties to a dispute resolution proceeding, including the Neutral, are not permitted to disclose and cannot be required to disclose through discovery or compulsory process any communication that is

9

part of ADR, unless an exception listed under 5 U.S.C. § 574 applies, or if required by another law.[1]

7. Any settlement agreement reached must be approved by the RA or his/her designee, as defined in the WIM. OSHA will maintain a copy of the approved settlement agreement in the investigative case file.

8. The parties may waive confidentiality or agree to confidentiality requirements that are less restrictive than those in 5 U.S.C. § 574(a), but they must inform the Neutral of such an agreement before the ADR begins.

9. OSHA will follow all applicable rules and procedures under the FOIA and the Privacy Act if it receives a FOIA or Privacy Act request that covers the settlement agreement or ADR case file.

E. Conflict of Interest

1. In general, the Neutral should avoid conducting ADR where there is an actual or potential conflict of interest between the Neutral and one or more parties.

2. However, the parties may waive a conflict after the Neutral fully discloses it to them. If the parties wish to waive a conflict, the Neutral must note the conflict and both parties must waive it in writing.

3. Otherwise, where a conflict exists, the Neutral will recuse him/herself and an alternative, neutral OSHA representative will be appointed to carry out ADR.

XIII. Parties' Ability to Settle during the OSHA Investigation

Nothing in OSHA's ADR Program precludes or restricts the parties' ability to settle their whistleblower complaint independently or with the assistance of an Investigator, the Regional Supervisory Investigator (RSI), or other ADR service, such as mediation with a third party, during an OSHA investigation. However, a settlement agreement in a whistleblower case that the parties reach prior to the close of OSHA's investigation must be submitted to OSHA for approval as provided in the WIM.

---

[1] For example, 5 U.S.C. § 574(f) states: "Nothing in this section shall prevent the discovery or admissibility of any evidence that is otherwise discoverable, merely because the evidence was presented in the course of a dispute resolution proceeding."

# NFIB GUIDE TO FEDERAL EMPLOYMENT LAW

$12.95

SEPTEMBER 2010

1. Fair Labor Standards Act (FLSA)

2. Equal Pay Act (amendment to FLSA)

3. Interviewing Don'ts

4. Title VII of the Civil Rights Act of 1964 (Title VII)

» Sexual Harassment (Title VII)

» Pregnancy Discrimination Act of 1978 (PDA)

» Age Discrimination in Employment Act (ADEA)

» Genetic Information Nondiscrimination Act of 2008 (GINA)

5. Americans with Disabilities Act (ADA)

6. Immigration Reform and Control Act (IRCA) (I-9)

7. Family and Medical Leave Act of 1993 (FMLA)

8. Occupational Safety and Health Act (OSH Act)



What You Need to Know About Employment Law

DEVELOPED BY

# CONTENTS



**one**

**two** Equal Pay Act
(amendment to FLSA) ...........................3

**three**

**four**

**five**

**six**

**seven**

**eight** Occupational Safety and
Health Act (OSH Act) .....................10

## ABOUT NFIB GUIDE TO FEDERAL EMPLOYMENT LAW

The NFIB Small Business Legal Center is pleased to provide you with this Federal Employment Law Handbook for Independent Business which describes various federal laws that regulate your business and your relationship with your employees.

If you would like to know more about any of the enclosed information you should contact an attorney licensed to practice law in your state. If you would like assistance finding an attorney, visit the *American Bar Association Lawyer Referral Service* at www.abanet.org/referral/home.html or contact (800) 285-2221 for your state or county bar association.

The information contained in this handbook has been compiled as a helpful guide for independent businesses. This handbook should not be considered a legal resource. While we have attempted to provide accurate and complete information, the authors and publishers of this handbook cannot be responsible for any errors or omissions in its contents. **Note: This handbook is provided with the understanding that neither the authors nor the publisher are engaged in rendering legal or professional advice.**

## ABOUT NFIB

The National Federation of Independent Business is the nation's leading small business association, representing it's members in Washington, D.C., and all 50 state capitals. NFIB's powerful network of grassroots activists send their views directly to state and federal lawmakers through our unique member-only ballot, thus playing a critical role in supporting America's free enterprise system.

## ABOUT NFIB SMALL BUSINESS LEGAL CENTER

The **NFIB SMALL BUSINESS LEGAL CENTER** is a 501 (c) (3), non-profit public interest law firm dedicated to the principles of justice and equity for small business. The Legal Center protects the rights of America's small business owners by providing guidance on legal issues and by ensuring that the voice of small business is heard in the nation's courts. For more information on the Legal Center's courtroom activity or how to support this worthy cause, please call (800) 552-6342 or visit www.nfiblegal.com.



one

# FAIR LABOR STANDARDS ACT (FLSA)

**THE FLSA ESTABLISHES** minimum wage requirements, overtime pay, record-keeping, and child labor standards for full- and part-time employees. State minimum wage laws differ widely and should be consulted in conjunction with this guidance.

## Application

The FLSA applies to all employers.

## Minimum Wage

The Federal minimum wage is $7.25 per hour.

Variations of this rate are:

- the higher rate if federal and state minimum wage rates differ;

- employees under 20 years of age may be paid $4.25 per hour during their first 90 consecutive calendar days of employment with an employer;

- certain full-time students, student learners, apprentices, and workers with disabilities may be paid less than the minimum wage under special certificates issued by the Wage-Hour office of the Department of Labor.

## Overtime Pay

Overtime pay is at least 1 1/2 times an employee's regular rate of pay and applies to all hours worked over a 40-hour workweek.

Some exceptions to overtime pay and minimum wage include:

- executive, administrative, and professional employees ("white collar exemption"); or

- outside sales employees; or

- seasonal amusement or recreational establishments; or

- casual babysitters and certain farm workers.

## Child Labor

An employee must be at least 16 years old to work in most non-farm jobs and at least 18 to work in non-farm jobs declared hazardous by the Secretary of Labor. Youths 14 and 15 years old may work limited hours with strict conditions. For example, work may not begin before 7 a.m. or end after 7 p.m., except from June 1 through Labor Day, when evening hours are extended to 9 p.m. Different rules apply in agricultural employment.

## Record-keeping Requirements

If an employee is subject to the minimum wage provisions or both the minimum wage and overtime provisions, an employer must keep extensive payroll records.

## Notice

The notice, *Your Rights Under the Fair Labor Standards Act*, must be posted where employees can readily see it.

### ADDITIONAL INFORMATION

To locate your Wage and Hour District Office visit: www.dol.gov/whd/america2.htm. To determine your state's minimum wage laws and more, visit: www.dol.gov/whd/minwage/america.htm.



# EQUAL PAY ACT

**two**

### Application

The Equal Pay Act applies to all employers.

### Permitted Acts

There are limited exceptions for pay differentials when an employer can show that:

- the difference is due to a seniority or merit system; or
- the difference is due to an employees' education, training, and experience.

### Record-keeping Requirements

Employers should retain:

- payroll records for at least three years; and

**THE 1963 ACT** prohibits wage and benefit discrimination between men and women in substantially equal jobs within the same establishment.

- all records (including wage rates, job evaluations, seniority and merit systems, and collective bargaining agreements) for at least one year after an employee's termination, that explain the basis for paying different wages to employees of opposite sexes in the same establishment.

### Notice

The notice, *Equal Employment Opportunity is the Law*, must be posted where employees can readily see it.

## ADDITIONAL INFORMATION

For more information, please refer to the Equal Employment Opportunity Commission's (EEOC) website at www.eeoc.gov or contact (800) 669-4000 to locate an EEOC field office in your area.

---

**three**

# INTERVIEWING DON'TS

When interviewing job candidates, to avoid liability it's important your questions focus exclusively on the skill and experience needed for the position. Here's a list of questions you should *not* ask applicants.

**DON'T ASK ABOUT:**

1. **AGE:** How old are you?  When did you graduate?  When were you born?
2. **MARITAL/FAMILY STATUS:**  What is your marital status?  Do you plan to have a family?  When?  How many children do you have?  What are your childcare arrangements?  What is your sexual orientation?
3. **ORGANIZATIONS:**  To what clubs or social organizations do you belong?
4. **PERSONAL:**  How tall are you?  How much do you weigh?
5. **ARREST RECORD:**  Have you ever been arrested?
6. **NATIONAL ORIGIN/CITIZENSHIP:**  Are you a U.S. citizen?  What is your native language?
7. **RELIGION:**  What is your religious affiliation?  Does your religion prevent you from working weekends or holidays?
8. **MILITARY RECORD:**  Were you honorably discharged?  Request military records.
9. **DISABILITIES:**  Do you have any disabilities?  Have you had any recent or past illnesses or operations?  How is your family's health?  Please complete the following medical history.



four

# TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 (TITLE VII)

**TITLE VII PROHIBITS** employment discrimination on the basis of race, color, religion, sex, or national origin in hiring, employment (all terms, conditions, and benefits), and termination.

## Application

Title VII applies to businesses with 15 or more employees.

## Examples of Discrimination

Below are some examples of discrimination covered under Title VII:

- Harassing a person because of their friends', relatives', or associates' race, skin color, religion, gender, national origin, age, or disability. (See also Sexual Harassment section.)
- Treating people in similar jobs differently.
- Making assumptions about the abilities of persons based on stereotypes, physical characteristics, or age.
- Retaliating against a person because a complaint was filed.

## Remedies Available

If a complainant is successful in a Title VII cause of action, remedies that may be available include reinstatement, back pay, damages for future loss of earnings, emotional pain and suffering, mental anguish, and attorneys' fees.

## Notice

The notice, *Equal Employment Opportunity is the Law*, should be posted where employees can readily see it.

### ADDITIONAL INFORMATION

To locate your Equal Employment Opportunity Commission (EEOC) field office call (800) 669-4000 or visit their website at www.eeoc.gov.

**four**

# (TITLE VII)



## SEXUAL HARASSMENT

Title VII prohibits sex discrimination and sexual harassment in the workplace.

## Application

Title VII applies to businesses with 15 or more employees. State and local laws may cover all businesses.

## Examples of Sexual Harassment

Sexual harassment covers behavior that creates a hostile work environment. Examples are:

· unwelcome sexual advances.

· requests for sexual favors.

· verbal or physical conduct of a sexual nature.

· sexually suggestive or offensive personal references about an individual.

**Note:**

· the victim or harasser may be male or female.

· the victim does not have to be of the opposite sex.

· the harasser can be the victim's supervisor, an agent of the employer, a supervisor of another area, a co-worker, or a non-employee.

· the victim does not have to be the person harassed but can be anyone affected by the offensive conduct.

· unlawful sexual harassment may occur without economic injury to or discharge of the victim.

## Notice

The notice, *Equal Employment Opportunity is the Law*, should be posted where employees can readily see it.

## ADDITIONAL INFORMATION

For more information, please refer to Equal Employment Opportunity Commission's (EEOC) website at www.eeoc.gov or call (800) 669-4000 to locate an EEOC field office in your area.

# (PDA)



## PREGNANCY DISCRIMINATION ACT

The 1975 Act prohibits discrimination on the basis of pregnancy, childbirth or related medical conditions. Women who are affected by pregnancy or related conditions must be treated in the same manner as other applicants or employees with similar abilities or limitations.

## Application

The PDA applies to employers with 15 or more employees.

## Prohibited Acts

An employer should not:

· refuse to hire a woman because she is pregnant as long as she is able to perform the major functions of her job; or

· refuse to hire a pregnant woman because its prejudices against pregnant workers or the prejudices of co-workers, clients or customers; or

· fire or force a worker to leave because she is pregnant; or

· take away credit for previous years, accrued retirement benefits, or seniority because of maternity leave; or

· fire or refuse to hire a woman because she has an abortion.

## Notice

The notice, *Equal Employment Opportunity is the Law*, should be posted where employees can readily see it.

## ADDITIONAL INFORMATION

For more information, please refer to the Equal Employment Opportunity Commission's (EEOC) website at www.eeoc.gov or contact (800) 669-4000 to locate the EEOC field office in your area.

four



# (ADEA)
## AGE DISCRIMINATION IN EMPLOYMENT ACT

# (GINA)
## GENETIC INFORMATION NONDISCRIMINATION ACT OF 2008

ADEA prohibits age discrimination against individuals who are 40 years of age or older.

## Application

ADEA applies to employers with 20 or more employees. The ADEA applies to both employees and job applicants.

## Prohibited Acts

Employers should not discriminate against a person because of his/her age with respect to any term, condition, or privilege of employment, including hiring, firing, promotion, layoff, compensation, benefits, job assignments, and training.

Employers must not include age preferences, limitations, or specifications in job notices or advertisements.

## Record-keeping Requirements

Employers should retain:

- all payroll records for at least three years after an employee's termination; and
- any employee benefit plan while in effect and for at least one year after termination; and
- any written or seniority or merit system while the system was in effect and for at least one year after an employee's termination.

## Notice

The notice, *Equal Employment Opportunity is the Law*, should be posted where employees can readily see it.

---

The 2008 law prohibits discrimination based on genetic information.

## Application

GINA applies to employers with 15 or more employees. GINA applies both to employees and job applicants.

## Examples of Discrimination

Below are some examples of discrimination covered under GINA:

- Harassing a person because of their genetic information or because of the genetic information of their relative.
- Making any employment-related decision based on genetic information, such as hiring, firing, pay, job assignments, promotions, layoffs, training, fringe benefits, or any other term of employment.
- Retaliating against a person because he or she filed a claim, participated in a discrimination proceeding, or opposed discrimination.

## Notice

The notice, *Equal Employment Opportunity is the Law*, should be posted where employees can readily see it.

---

## ADDITIONAL INFORMATION

For more information, please refer to Equal Employment Opportunity Commission's (EEOC) website at www.eeoc.gov or locate the nearest EEOC field office in your area by calling (800) 669-4000.

## ADDITIONAL INFORMATION

For more information, please refer to Equal Employment Opportunity Commission's (EEOC) website at www.eeoc.gov or locate the nearest EEOC field office in your area by calling (800) 669-4000.



five

# AMERICANS WITH DISABILITIES ACT (ADA)

**THE ADA PROHIBITS** employers from discriminating against qualified individuals with disabilities. An individual with a disability is someone who:

- has a physical or mental impairment that substantially limits one or more major life activities; or

- has a record of such an impairment; or is regarded as having such an impairment.

Persons discriminated against because they have a known association or relationship with a disabled individual are also protected.

## Application

The ADA applies to employers with 15 or more employees. Independent contractors are not covered. State and local human rights or handicap discrimination laws may apply to all employers.

## Requirements

The ADA requires that an employer make reasonable accommodations in certain circumstances for a disabled employee who is otherwise qualified for the job. A person may be otherwise qualified for the job if:

- the person meets the educational, experience, skill, and other job-related requirements; and

- the person can perform the essential job functions (with or without reasonable accommodations).

**Note:** It is a good idea to identify the essential job functions and propose a job-description before beginning the hiring process.

If an employee is otherwise qualified for the position, there are three areas where an employer should provide reasonable accommodations:

- to permit the employee to perform the essential job functions

- testing and application procedures

- to permit the enjoyment of general work privileges such as access to restrooms and customary employee work-related activities

**Examples of Reasonable Accommodations Include:**

- part-time or modified work schedule

- acquisition or modification of equipment

- making facilities accessible to disabled persons

- reassignment of marginal job function

**Note:** An employer may not have to provide reasonable accommodations if they can establish "undue hardship" i.e., that it would be unduly expensive, disruptive, or affect the business.

## Notice

The notice, *Equal Employment Opportunity is the Law*, should be posted where employees can readily see it. A copy of this notice is provided in this handbook's Appendix.

## ADDITIONAL INFORMATION

For more information call the Department of Justice ADA Information Line at (800) 514-0301 or visit their website at www.ada.gov.



six

# IMMIGRATION REFORM AND CONTROL ACT (IRCA)

**THE IRCA OF 1986** prohibits any employer from hiring any person who is not legally authorized to work in the United States and it requires that employers verify the employment eligibility of all new employees.

The IRCA also makes it unlawful for employers to discriminate in hiring and discharge based on national origin (as does Title VII) and on citizenship status.

## Application

The IRCA applies to all employers, with the following *exceptions:*

- employers with between four and 14 employees (who would not be covered by Title VII anti-discrimination provisions) may not discriminate on the basis of national origin; and

- employers with at least four employees may not discriminate on the basis of citizenship.

## Procedural and Record-keeping Requirements

All employers should ensure that employees and the employer complete an Employment Eligibility Verification Form (I-9) when an employee begins work.  Employees must keep I-9s on file for all current employees.

### ADDITIONAL INFORMATION

For more information, contact the U.S. Citizenship and Immigration Services (USCIS) at (800) 375-5283 or visit their website at www.uscis.gov.  If you need a particular form, please call (800) 870-3676.



seven

# FAMILY AND MEDICAL LEAVE ACT OF 1993 (FMLA)

An employer may require 30 days advance leave notice and medical certification.

**THE FMLA REQUIRES** employers with 50 or more employees to provide eligible employees with up to 12 weeks of unpaid, job-protected leave in a 12-month period for specified family and medical reasons, or for any "qualifying exigency" arising out of the fact that a covered military member is on active duty, or has been notified of an impending call or order to active duty, in support of a contingency operation. The FMLA also allows eligible employees to take up to 26 workweeks of job-protected leave in a "single 12-month period" to care for a covered service member with a serious injury or illness.

## Leave Requirement

An employee is entitled to unpaid leave for any of the following reasons:

- to care for the employee's child after birth, or placement for adoption or foster care;
- to care for the employee's spouse, son or daughter, or parent, who has a serious health condition; or
- for a serious health condition that makes the employee unable to perform the employee's job.

An employer may require 30 days advance notice (when the need is foreseeable) and medical certification.

## Employment and Benefit Protections

Upon return from leave under FMLA, an employee should be restored to their original or an equivalent position with equivalent pay, benefits, and other employment terms.

An employee's use of leave under FMLA may not result in the loss of any employment benefit that accrued prior to the start of an employee's leave.

Employers must maintain the employee's health coverage under any "group health plan" during the employee's FMLA leave.

## Notice

Employers should post, *Your Rights Under the Family and Medical Leave Act of 1993*, where employees can readily see it.

### ADDITIONAL INFORMATION

For more information visit www.dol.gov/compliance/laws/comp-fmla.htm.

Dear NFIB Member:

As a small business owner, you work hard everyday at your dream of running a successful enterprise. Yet being a small business owner means spending countless hours going over every detail to make sure your business is in compliance with federal and state laws.

To help make compliance a little easier, we are pleased to provide you with this *NFIB Guide to Federal Employment Law.*

This book will give you the basics of employment laws that you will most likely encounter at your business, such as the Fair Labor Standards Act, the Occupational Safety and Health Act, and several anti-discrimination laws.

Developed by the NFIB Small Business Legal Center, the *NFIB Guide to Federal Employment Law* was written to be your first stop to learn which federal employment laws apply to your business and what your business must do to comply. The NFIB Small Business Legal Center is the voice for small business in the nation's courts and the legal resource for small business owners nationwide.

This guide is just one of the many compliance guides developed by our Legal Center to make your job just a little bit easier. To find out about all of the guides available in this series, call 1-800-NFIB-NOW or visit www.NFIB.com/legal.

Sincerely,

Dan Danner
NFIB President



eight

**Exceptions:** Employers exempt from the record-keeping requirements should:

• Report fatalities or multiple hospitalization accidents; and

• Maintain a log of occupational injuries and illnesses and make reports if notified in writing by the Bureau of Labor Statistics that you have been selected to participate in a statistical survey.

## Standards

• Walking and working surfaces, ladders, platforms, scaffolds, and means of egress

• Ventilation, noise, radiation, and hazardous or toxic liquids and air contaminants

• Personal protective equipment use and maintenance

• Hazardous materials such as acids, corrosives, explosives, flammable and toxic substances

• Workplace sanitation

• Medical facilities

• Materials handling and storage

• Use, maintenance and construction of cranes and industrial vehicles

• Welding equipment and procedures

• Equipment, tool, and machine guarding

• Electrical apparatus

• Carcinogens

• Hazard communication

• Access to records

• Process safety management

• Blood borne pathogens

• Confined spaces

• Asbestos

• Control of hazardous energy

• Fall control

## Notice

Employers should post the following notices where employees can readily see them:

• Job Safety and Health Protections workplace poster (OSHA 3165), or their state's equivalent; and

• Annual summary of injuries and illnesses (Form 300 by February 1).

## ADDITIONAL INFORMATION

For more information visit www.dol.gov/compliance/laws/comp-fmla.htm.